UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
03 MAR 17 PM 3: 19
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| MARCIA WILLIAMS, } | |
| } | |
| Plaintiff, } | |
| } | |
| vs. } | CASE NO. CV 01-B-2358-S |
| } | |
| BELLSOUTH } | |
| TELECOMMUNICATIONS, INC., } | ENTERED |
| } | MAR 17 2003 |
| Defendant. } | |

**MEMORANDUM OPINION**[1]

Currently before the court is a Motion for Summary Judgment filed by defendant, BellSouth Telecommunications, Inc., ("defendant" or "BellSouth"). Plaintiff, Marcia Williams ("plaintiff" or "Williams"), filed this lawsuit against BellSouth in the Circuit Court of Jefferson County, Alabama, alleging the wrongful denial of disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Defendant timely removed this action, and this court has jurisdiction pursuant to 28 U.S.C. § 1331. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court. Although the court has made some changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997). This is an important opinion. Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as to the appropriate outcome. Counsel drafted the opinion according to the express instructions of the court as to its contents. These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument. Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.

relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is to be granted.

## I. FACTUAL SUMMARY[2]

Plaintiff is an employee of BellSouth. She worked as a customer Service Representative. (R. at 83.) Due to various medical conditions, Williams began a leave of absence on July 14, 2000, and applied for benefits under the BellSouth Short Term Disability Plan ("STD Plan") after the applicable seven-day waiting period expired on July 20, 2000. (R. at 83; R. at 17, STD Plan: Summary Plan Description ("SPD").)

The STD Plan has delegated claims administration to Kemper National Services, Inc. ("Kemper"). (R. at 23, SPD.) Kemper determines eligibility for benefits based on the specific definition of disability in the STD Plan. Under the STD Plan:

> "Disability" means a medical condition which makes a Participant unable to perform any type of work as a result of a physical or mental illness or an accidental injury. "Any type of work" includes the Participant's regular job with or without accommodations, any other Participating Company job (regardless of availability) with or without accommodations, or temporary modified duties. "A Participating Company job" is any job within a Participating Company; or any job outside a Participating Company which is comparable in skills and functions. A Participant subject to a Disability is referred to as being "Disabled."

(R. at 5, STD Plan.) The SPD similarly provides a definition, which states that a participant is disabled and is "unable to perform any type work as a result of a physical or mental illness or accidental injury." (R. at 17, SPD.) Any type work is defined to include the employee's "regular

---

[2]Although some statements of fact are disputed, the evidence is cited in the light most favorable to plaintiff, the non-moving party, and all reasonable inferences from admissible evidence are drawn in favor of plaintiff. *See, e.g., Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000).

job with or without accommodations, any other participating company job (regardless of availability) with or without accommodations, or temporary modified duties." (*Id.*)

In considering plaintiff's initial claim for STD benefits, Kemper's Case Manager received a mental health assessment from Dr. Barnett. (R. at 83.) Dr. Barnett indicated that Williams had a decrease in reactivity, a feeling of hopelessness, and impaired concentration. (R. at 83, 93.) He expected her to return to work on August 21, 2000. (*Id.*) Kemper's Case Manager sent a letter dated August 1, 2000, denying her STD claim and requesting that she forward any additional medical data for possible reinstatement of benefits. (R. at 83, 99-100.)

Kemper then received medical forms from Dr. Michael Holt. (R. at 83, 104-05.) Dr. Holt indicated "moderate" and "trace" impairments on a number of categories. (R. at 104.) After reviewing this new information, Kemper again sent a letter on August 2, 2000, confirming that the decision to deny benefits remained unchanged. (R. at 84, 107.)

On September 14, 2000, Kemper received Williams's first level appeal with attached medical documentation. (R. at 84, 123.) Plaintiff submitted a more detailed report from Dr. Holt based on evaluations of the plaintiff on August 10 and August 22, 2000. (R. at 108-20.) While noting signs of depression,[3] Dr. Holt noted that Williams was "alert, well oriented, and

---

[3]In the "Summary and Recommendations" section of the report, Dr. Holt stated: This evaluation shows both subjective and objective evidence of significant and incapacitating psychological problems including severe depression, moderate anxiety, difficulties in thinking, attending, concentrating, and decision-making, as well as problems with suspiciousness and distrust, perhaps even subtle paranoia. . . . It seems quite likely that this patient's psychological and psychiatric problems are being significantly exacerbated by the manner in which she perceives that she is being dealt with by her employer and disability insurance company. While she has been told by her psychiatrist and psychologist that she is experiencing a disability her insurance company has taken the position that she is not disabled. Unfortunately, this intensifies her suspiciousness and distrust as well as making

3

cooperative." (R. at 109.) She reported no active suicidal ideation, and was not experiencing any delusions or hallucinations. (*Id.*)

Kemper sent plaintiff for an independent medical examination ("IME") with Dr. Charles Whetsell, Ph.D., licensed psychologist.[4] (R. at 84.) According to Dr. Whetsell's report, Williams indicated that she was caring for two young children and a granddaughter, cooking meals, performing housework, running the household, paying bills, keeping track of the checkbook and tending to finances. (R. at 124.) Williams also informed Dr. Whetsell that she attended worship service, Sunday School, and Bible study. (*Id.*) Williams's grooming and hygiene were good, and she maintained "eye contact" and a "respectful attitude." (R. at 126.) She denied hallucinations, and indicated she drove herself to the exam. (*Id.*) Rather than stating she was unable to work, plaintiff indicated to Dr. Whetsell that she would like to change jobs and receive one which was less stressful than her Service Representative job. (R. at 127.)

On tests administered by Dr. Whetsell, plaintiff performed better than average in reasoning and problem solving, and average to low average in intellectual functioning. (R. at 127.) She had average memory function. (R. at 128.) Her testing suggested to Dr. Whetsell that her stress was "not overwhelming her capacity for coping." (*Id.*)

---

       her feel more self-doubting, confused, and hopeless. It seems vital to resolve this conflict between her health-care providers and her employers [*sic*] disability insurance company.
(R. at 111.)

    [4]On August 15, 2000, BellSouth requested that an IME be obtained "due to possible termination." (R. at 84.)

Dr. Whetsell also filled out a form entitled "Psychiatric Functional Capacity Exam," indicating on a number of categories that upon examination plaintiff "failed to demonstrate significant impairment." (R. at 130-32.)

Dr. Whetsell's IME report was reviewed by a Kemper psychologist, Dr. Lawrence Burstein, Ph.D. (R. at 84, 145.) Dr. Burstein indicated that the medical evidence "fails to support disability."[5] (R. at 145.) Dr. Burstein noted that the IME report indicated that Williams was functioning within normal limits and that she "did not display any significant impairments in cognitive functioning that would prevent her from performing the core elements of her occupation or from performing any useful work." (*Id.*) He concluded that plaintiff "is capable of performing work at this time." (*Id.*)

In December, 2000, Kemper's psychiatrist, Dr. Barry Glassman, performed a review.[6] (R. at 84, 154.) Dr. Glassman also concluded that the medical evidence "fails to support disability," and that her condition was not so severe as "to preclude performing any work." (R. at 154.)

On December 21, 2000, Kemper sent a letter to plaintiff that provided a review of the medical evidence submitted and ended with Kemper's conclusion that there was insufficient medical data to support a disability from "any type of work." (R. at 84, 155-56.) The letter informed plaintiff that the original decision had been upheld on appeal, and advised her that she had sixty (60) days to file a final written appeal. (R. at 155-56.)

---

[5]Dr. Burstein reviewed only the IME report from Dr. Whetsell. (R. at 84, 145.)

[6]Dr. Glassman reviewed the following medical documentation: "Note from Dr. Barnett, Psychological Report Date of Evaluation 8/10/00 and 8/22/00 from Dr. Holt: To Office Note from Dr. Holt Dated 7/24/00, MHA Report from Dr. Barnett Dated 7/27/00, and MHA Report from Dr. Holt Dated 8/1/00." (R. at 153.)

On February 14, 2001, plaintiff's attorney at that time, Thomas Bowron (not counsel of record here), filed an appeal, attaching a letter written by Dr. Holt. (R. 162-63, 159-161.) Dr. Holt's letter labeled Kemper as "incompetent," and referred to "delaying tactics." (R. at 161.) Dr. Holt provided his opinion that plaintiff could not be "successfully employed." (R. at 160-61.)

Kemper submitted Dr. Holt's letter to Dr. Burstein for an additional review.[7] (R. at 84.) Dr. Burstein noted that Dr. Holt was "angry." (R. at 172.) He stated that Dr. Holt's statements reflected "a lack of understanding about the difference between an [sic] decrement in functioning due to depression and inability to perform useful work which would substantiate that Ms. Williams would have met her plan's definition of disability." (*Id.*) Dr. Burstein noted that Dr. Holt did not provide any new information substantiating an impairment in functioning which would prevent performing any useful work. (*Id.*) Finally, Dr. Burstein again concluded that the IME demonstrated that Williams had "sufficient cognitive and emotional strength to be able to perform useful work." (*Id.*)

Kemper upheld the denial of benefits on the second appeal. (R. at 84, 177.) Plaintiff was informed of this decision by letter on March 29, 2001. (R. at 177.) She was further informed that "this second level review decision is final therefore not subject to further administrative review." (*Id.*) Plaintiff commenced this lawsuit August 2, 2001.

---

[7]In addition, Kemper forward to Dr. Burstein the IME report from Dr. Whetsell of 10/9/00, and Dr. Burstein's own peer review report of 10/9/00. (R. at 84, 172.) Dr. Burstein did not review Dr. Holt's report regarding his evaluations of plaintiff after consultations with her on 8/10/00 and 8/22/00.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all reasonable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). After the nonmoving party has responded to the motion for

summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III. DISCUSSION

The United States Supreme Court has held that if a benefits plan gives the plan administrator or fiduciary discretionary authority to determine the eligibility for benefits and to construe the terms of the plan, a court reviewing a denial of benefits challenged under section 502(a)(1)(B) of ERISA should apply an abuse of discretion standard, also known as the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *see also Jett v. Blue Cross & Blue Shield, Inc.*, 890 F.2d 1137, 1138 (11th Cir. 1989); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38 (11th Cir. 1989).

The Plan documents specifically provide:

> Kemper is the named fiduciary under the plan with complete authority to review all denied claims for benefits in exercising such fiduciary responsibilities. Kemper shall have discretionary authority to determine whether or to what extent participants are eligible for benefits and to construe disputed or doubtful plan terms. Kemper shall be deemed to have properly exercised such authority unless they have abused their discretion hereunder by acting arbitrarily and capriciously.

(R. at 23, SPD.) Such express language confers the "discretionary authority" required in order to apply the arbitrary and capricious standard. *Jett*, 890 F.2d at 1139 (finding discretionary authority conferred by plan which states "whenever the Claims Administrator makes reasonable determinations in the administration of the [Plan] . . . such determinations shall be final and conclusive"); *Guy*, 877 F.2d at 39 (finding requisite grant of authority where plan stated "'full

and exclusive authority to determine all questions of coverage and eligibility'" as well as "'full power to construe the provisions of [the] Trust'").

Plaintiff advances several arguments against application of the arbitrary and capricious standard under *Firestone*. Essentially, plaintiff asserts that the claims administrator, Kemper, is an "agent" of defendant. Because defendant ultimately pays benefit claims out of its assets, plaintiff asserts that the *heightened or modified* arbitrary and capricious standard applies. *See Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556 (11th Cir. 1990) (holding that where the administrator which determines eligibility under a plan has a conflict of interest, the court must determine whether administrator's decision was correct and, if not, analyze whether such conflict of interest tainted the decision). Having specifically considered plaintiff's assertions, this court rejects that argument.

First, based upon a review of the record, the court is of the opinion that Kemper is not the "agent" of BellSouth.[8] Some of the factors used to determine whether an agency relationship exists include, the extent to which the principal controls the manner and means by which the alleged agent conducts its work, the discretion afforded the alleged agent, and the alleged agent's

---

[8]Subsequent to oral argument, plaintiff's counsel provided the court with an opinion entered by Judge Acker in *Carl Wright v. BellSouth Telecommunications, Inc.*, No. 01-AR-2213-S (N.D. Ala. Oct. 10, 2002). Counsel correctly notes that Judge Acker found sufficient evidence to conclude that Kemper is BellSouth's agent. The court has read Judge Acker's opinion but is not persuaded that its decision that Kemper is not BellSouth's agent is wrong. In addition, although counsel represents that the evidence of agency before this court and before Judge Acker is the same, the court notes that it would be speculating if it made such a conclusion based on the record before it.

role in hiring and paying its workers. *See Darden*, 503 U.S. at 323-24 (quoting *Reid*, 490 U.S. at 751-752).[9]

Under the SPD, Kemper has been delegated complete authority and discretion to make claim determinations. Kemper pays and supervises its own employees who make such decisions, and the physicians who assist them are not BellSouth employees. (Vega Aff.)[10] Kemper's Benefit Review Committee, which reviews the decisions of Kemper's Case Managers on appeal, and makes a final determination, is comprised of employees of Kemper, not BellSouth. (Vega Aff.) While plaintiff argues that certain documents were provided by BellSouth to Kemper to assist it in administering claims, and BellSouth has had other communications with Kemper, such contact and interaction is incidental to the contractual relationship between the parties and does not establish agency. In short, a certain amount of contact between the plan administrator, BellSouth, and the claims administrator, Kemper, is necessary and appropriate in administering BellSouth's benefit plans. Accordingly, based on these facts, the court is of the opinion that

---

[9]The Eleventh Circuit has held that ERISA preempts state law and authorizes federal courts to create federal common law to implement Congress's statutory scheme. *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1580 (11th Cir.1992). Accordingly, the court is directed to apply the general common law of agency. *See Nationwide Mut. Ins. v. Darden*, 503 U.S. 318, 323 n.3 (1992) (construing term "employee" in ERISA section using "the general common law of agency," specifically referencing the Restatement (Second) of Agency (1958), "rather than . . . the law of any particular State") (quoting *Comm. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989)).

[10]Plaintiff has filed a Motion to Strike the affidavit of Marisol Suro Vega, submitted with defendant's Reply Brief. The court finds that the affidavit addresses the issue of agency, first raised in plaintiff's response brief, and therefore, is of the opinion that it is proper to consider the affidavit for this limited purpose. Accordingly, the court finds that plaintiff's Motion to Strike should be denied.

Kemper is not an agent of BellSouth,[11] and will therefore apply the arbitrary and capricious standard.

In applying the arbitrary and capricious standard, the court must determine whether Kemper had a reasonable basis for its decision to deny plaintiff's benefits based upon the facts known to Kemper at the time the decision was made. *Guy*, 877 F.2d at 39. The decision "need not be the best possible decision, only one with a rational justification." *Griffis v. Delta Family-Care Disability Plan*, 723 F.2d 822, 825 (11th Cir. 1984).

As noted, since the court's inquiry is limited to determining whether there was a reasonable basis for the decision, the court may only consider "the facts as known to the administrator at the time the decision was made." *Jett*, 890 F.2d at 1139. It is not the court's function to conduct a *de novo* review or consider evidence that was not made known to the decision-maker at the time of the decision.

The court has carefully reviewed all of the evidence available to Kemper at the time its final decision was made, and concludes that there was a reasonable basis for Kemper to deny benefits under the plan. The medical evidence is sufficient to support a reasonable conclusion that plaintiff was not disabled under the terms of the STD Plan.

As noted previously in the factual summary, the STD Plan and the SPD provide a specific definition of disability, which must be met before STD benefits are provided to employees. (R. at 5, STD Plan, p. 2.) The court is obligated to apply the express terms of this ERISA plan. *Arnold v. Life Ins. Co.*, 894 F.2d 1566, 1567 (11th Cir. 1990) (stating that court is required to

---

[11]The court also finds that Kemper is not operating under a conflict of interest. As noted above, Kemper has full discretion to make decisions regarding benefits, and the decision to grant or deny benefits has no effect on its financial assets.

"give effect to the unambiguous language of the policy when construed in accordance with its terms").

Substantial evidence indicated that Williams was able to perform some work, and thus was not disabled under the terms of the STD Plan and the SPD. The IME performed by Dr. Whetsell revealed average functioning from a cognitive level. While the IME indicated some distress, it did not indicate that she was not able to function in the exam or in the work environment. Dr. Whetsell's report confirmed that while absent from work plaintiff was engaged in substantial activities of daily living, including caring for two young children and a granddaughter, cooking meals, performing housework, handling household finances, and participating in activities at her church. Plaintiff herself told Dr. Whetsell that she wished to receive a position less stressful than her Service Representative job. Such information supports a finding that while she may have had difficulty performing all of the full-time duties of her own job, plaintiff was not disabled from performing any type of work (including modified duties). In addition, Drs. Burstein and Glassman performed their own reviews of medical information and concluded that plaintiff was not disabled from performing "any type work." Kemper relied on these medical opinions in making the decision to deny benefits. (*See, e.g.*, R. at 155-56, Denial Letter of 12/20/00.)

Therefore, since the medical evidence available to Kemper when it denied benefits on March 29, 2001 reasonably supported Kemper's finding that plaintiff was not disabled, the court finds that Kemper's decision to deny plaintiff's claim for benefits was reasonable, and is due to be upheld.[12]

---

[12]In addition to challenging the denial of STD benefits, plaintiff asserts that the court should also award long term disability ("LTD") benefits to plaintiff. However, as plaintiff would be required to exhaust administrative remedies under ERISA, the court has no authority to grant

## IV. CONCLUSION

For the reasons stated herein, the court will grant defendant's Motion for Summary Judgment. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the \_\_17th\_\_ day of March, 2003.

                                    /s/ Sharon Lovelace Blackburn
                                    **SHARON LOVELACE BLACKBURN**
                                    United States District Judge

---

long term disability benefits. Kemper has rendered no decision on LTD benefits which this court may review. *See Springer v. Wal-Mart Assoc. Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990). In any event, this court's ruling on defendant's Motion for Summary Judgment renders such request moot.